Why don't we hear the last case on the calendar for today, 23-7501 Cameron Cates v. Proctor & Gamble Company, et al. We'll just let everybody get settled in the courtroom. Again, just feel free to tilt the microphones, Mr. Cates. And I'm sure as you've been watching the other lawyers, you'll see there's a little clock in front of you. It'll be counting down. You have a total of five minutes, and I understand you would like to hold on to one minute for rebuttal. So you'll go for four minutes. Then we'll hear from counsel for the appellee. And then, Mr. Cates, we'll invite you up, and then you'll have one minute for rebuttal if there's anything you'd like to respond to. Does that make sense? Yes. Okay. Thank you very much. Whenever you're ready, Mr. Cates. Okay, good morning, Your Honors. Good morning, Court. And may it please the Court, my name is Cameron Cates. I'm the author of my song, She Loves Her Job, which is protected under copyright from the moment I set it to paper, which I did. And I set that up as Exhibit A, my original manuscript, which includes the very first sung line, I love her so. That is the qualitative thrust. It's very important to the song. I would not have written the rest of the song without that part. And in my manuscript, I have it three times. I don't know if anybody reads music, but if you look at the manuscript on the first page, it's written three distinct times, and it is a work I registered with the Copyright Office as a performing arts work. They had two separate applications. One was for performing arts. One was for sound recordings. I did not use the sound recordings. I followed the instructions for performing arts. And so that allows me to perform it. It's not the sound recording that's copywritten, although I did make a tape of that and eight other works to compile them all into my deposit for the Library of Congress. Well, I think Judge Nardacci made an error because she said that I can't raise allegations of saying that I repeated it three times. And that's wrong because the prima facie evidence shows that it's written three times. And also she said it was de minimis. And I tried to show examples of de minimis work. De minimis is something that's described in the Compendiums, but the Compendiums is not a statute. The Compendiums is only a guide for the Copyright Office to follow when registering works. I also showed the Milos Rosas film score for The Killers, which begins dum-da-dum-dum. And that was also a case that was just the judge dismissed it, dismissed the you can't have that. That's not it. I'm sorry. Anyway, I brought that up also. And that case was settled. But it was not dismissed for being de minimis, although they tried to do that. So these are all important things. And mine was an original work. And as Judge Hand says, it's the spontaneous result of the author's imagination. And that's what it was. I wrote that song when I was inspired working on 42nd Street, you know, taking the subway and listening to songs in my head. And I wrote it down. And that's what the law says. The moment you put it on paper or whatever medium, it's protected. And it's the beginning of my song. It's uniquely placed as an intro, an instrumental intro. And that part, which kicks off into the rest of the song. I love this song. And it's a do-do-do-do-do-do. So I can see how when I was rehearsing it, I heard it. I realized I heard this song. It's the Febreze commercial. So, Mr. Cates, you have a minute for rebuttal. If you would prefer, you could use it now instead of coming back after counsel for the appellee. Or if you want to hold on to the minute, you would sit down now. I'd like to hold on to that because I think they're going to come back. We'll see you again shortly then. We've heard this. Why don't we hear from Attorney Rockman? Yes, Your Honor. For the appellee. Thank you. I just want to set this up if I can. May it please the court. Mark Rockman on behalf of the appellees Procter & Gamble, Great Global Group, and WPB Group USA. There's another appellee present here, but I do not believe that they will be giving oral argument. Your Honors, this is a case about five notes. As Mr. Cates noted, the five notes that he's claiming protection of come from a four-minute song that he wrote called She Loves Her Job. There's no dispute in this case whether Mr. Cates has copyright protection in that entire song. That's not in dispute. What Mr. Cates, in all due respect, is missing and what the trial court got right was that he cannot pluck five notes out of that song and claim that those five notes on their own are protectable, copyrightable content. What's an issue here is the Febreze jingle, which you may have heard. It is a simple mi-re-do-re-do notation that is used with the lyrics la-la-la-la-la. The words in Mr. Cates' song are not an issue here. It's just the notes. And as the trial court properly found in its decision, which appellees asked that the court affirm, those five notes are simple, basic components of music. They appear in other songs, other songs that occurred before Mr. Cates' song. We actually put those before the court. They weren't considered in the court's decision, but they are songs that this court might have recognized. There's one, Leader of the Pack, where they sing, they call him the leader of the pack. It shows that what we're dealing with, with respect to these five notes, if you just pluck them out, is, as the trial court noted, de minimis, non-protectable elements of what is a bigger composition. There's also a little... Can I ask you to help me out here? Sure. I mean, we can all think of songs where a part of the song does become somewhat iconic. One can think of any number of movie scores written by John Williams where you hear the first few notes and you know right away. What might afford protection in that context and not here? That's a very good question, Your Honor, and I think the trial court delved into that. You need to have some distinctive tempo, melody, tone, repetition, or cadence, such that someone wouldn't overlook them when hearing the song. And the truth is, in this song, with all due respect to Mr. Cates, he sings it, and one point I was going to say is the composition that he's referring to in a manuscript is actually not what he deposited with the copyright office. He deposited a sound recording, and that sound recording is what he's claiming our clients had access to. So we have to focus on the actual sound recording because we never had access, and it's not even alleged, to his manuscript. But the five notes where he starts his song, I Love Her So, are lost once he continues on with the song and actually repeats in his song, She Loves Her Job, which is the refrain. He tries to change his song to say that the I Love Her So part is the hook, but it's not. It's She Loves Her Job, the title of the song, which he repeats over 29 times. That is, if you were to say, is there a protectable sequence of notes and melody that could come out of his song, that would be it, similar to the, you know, there's a case that we cite in our papers that has this similar concept. It's the Bright Tunes versus Harris Songs case. That's the Chiffon's He's So Fine where they had, in this decision, and the defense was George Harris and his song, My Sweet Lord, and the court was distinguishing between the point of the three notes and the five notes. In this case, it was a Sol Mi Re and a Sol La Di La Do. If you just looked at those on their own and just plucked them out, not protectable, but when you had the repetition of it continually throughout the song, it became a critical component of the song, then it can be protectable. And that's the distinction the court made, the trial court correctly made here, and the reference to de minimis by this trial court, I think, was on point. Okay. I think we have your argument, unless there are any questions. I think we have your argument. Why don't we hear from Mr. Cates. Mr. Cates, you have a minute. If there's anything that you've heard from opposing counsel that you'd like to respond to, up at the podium, of course. If you want to take a second to think, sure. Because then I'm very pressured to make the most out of the minute. Thank you. Yes. Okay, I'm ready. This is not a sound recording. Although I aired and sang a sound recording, but when I read the application, sound recording refers to the work, whatever it is, a song on a tape or on a 45, for instance. That is a sound recording. We understand. It's the song. It's the song. It is the song. It's the most important part of that song. If I didn't put that part of the song in, I wouldn't have the rest of the song. In fact, that part of the song fits into any part of my song. In fact, when I perform it, which I do consistently to this day for many, many people in New York, I'll throw that in. Instead of saying, uh-oh, I'll go, I love her so. She loves her job. I love her so. It's a kickoff, especially the words, it's situated. And I made a mistake in not giving a side-by-side presentation of the la-la-la-la. No, we understand that. I think you've communicated that adequately. So, Mr. Cates, we thank you for coming here. We thank the appellees for coming down today. As with all the cases today, we will reserve decision, and at some point there will be a written decision of the court that will be issued in due course. Having completed our business for the day, we will now stand adjourned.